FRALEY, D.B.A. FRALEY TRUCKING, APPELLEE, *v.* ESTATE OF OEDING ET AL.,
APPELLANTS.

[Cite as *Fraley v. Estate of Oeding,* 138 Ohio St.3d 250, 2014-Ohio-452.]

*Civil Procedure—Long-arm jurisdiction—Ohio court may not exercise personal
jurisdiction over nonresident based solely on conduct of nonresident's
insurance company—Judgment reversed.*

(No. 2012-1994—Submitted October 9, 2013—Decided February 12, 2014.)

APPEAL from the Court of Appeals for Butler County,

No. CA2011-09-0180, 2012-Ohio-4770.

_____

SYLLABUS OF THE COURT

An Ohio court may not exercise personal jurisdiction over a nonresident based
solely on the conduct of the nonresident's insurance company.

_____

FRENCH, J.

{¶ 1}  In this appeal, we address whether Ohio courts may exercise in-
personam jurisdiction over a nonresident defendant based solely on the conduct of
the defendant's insurer.  We hold that they may not.

*Facts and Procedural History*

{¶ 2}  Appellee, David Fraley, d.b.a. Fraley Trucking, an Ohio resident,
filed this negligence action against appellants, the estate of Timothy J. Oeding,
J&R Equipment and Storing ("J&R"), and Auto-Owners Insurance Company
("Auto-Owners"), in the Butler County Court of Common Pleas.  Fraley's action
arises out of a motor-vehicle accident that occurred in November 2008 in Indiana.
Fraley's complaint identifies an Indiana address for each appellant, and service of
process was directed to appellants in Indiana.

**{¶ 3}** Fraley alleged that Timothy Oeding, while acting within the course of his employment with J&R, negligently caused a collision between the motor vehicle Oeding was operating and a truck owned by Fraley and operated by Fraley's employee, Craig Farler, who was also acting within the course of his employment. Oeding died as a result of injuries sustained in the collision. Fraley alleged that Auto-Owners, which insured J&R and Oeding, conducted an independent investigation into the facts of the accident and, as part of its investigation, placed an investigative hold on Fraley's truck for approximately five months. Fraley claimed that Oeding's negligence proximately caused tangible property damage to Fraley's truck and personal injury to Farler. Fraley also claimed that Auto-Owners' investigatory hold caused Fraley intangible economic loss due to the loss of use of the truck. The parties' filings indicate that they settled Fraley's claims for property damage and personal injury but were unable to resolve Fraley's loss-of-use claim, the sole claim left to be resolved.

**{¶ 4}** Appellants moved the trial court to dismiss Fraley's complaint for lack of personal jurisdiction, pursuant to Civ.R. 12(B)(2). They argued that Fraley's allegations do not fall within the scope of Ohio's long-arm statute or Civ.R. 4.3(A) and that appellants do not have sufficient minimum contacts with Ohio to justify the exercise of jurisdiction. Appellants also argued that Auto-Owners' provision of insurance coverage in several states, including Ohio, is insufficient to permit Ohio's exercise of personal jurisdiction over Auto-Owners or its insureds given the circumstances of this case.

**{¶ 5}** In response to appellants' motion, Fraley submitted an affidavit in which he restated relevant facts from the complaint and further stated that he suffered economic loss in Ohio due to Auto-Owners' investigative hold. Fraley's affidavit additionally stated that Auto-Owners directed correspondence and calls to Fraley and his counsel in Ohio to resolve Fraley's claims and that Auto-Owners is licensed to transact business in Ohio. In his memorandum opposing dismissal,

Fraley did not argue that Oeding or J&R had any personal contacts with Ohio, but argued that personal jurisdiction exists over all appellants because Auto-Owners transacted business in Ohio and caused tortious injury to Fraley in Ohio while acting as an agent of J&R and Oeding.

{¶ 6} The trial court granted appellants' motion to dismiss. The court held that it could not exercise personal jurisdiction over Oeding and J&R solely because their insurer did business in Ohio and further held that Fraley was not entitled to maintain a direct action against Auto-Owners, because he had not obtained a judgment against Auto-Owners' insureds.

{¶ 7} On appeal, Fraley conceded that Ohio law precludes him from bringing a direct action against Auto-Owners, but he argued that the trial court erred in determining that it lacked personal jurisdiction over Oeding and J&R. The Twelfth District Court of Appeals agreed and reversed the trial court's judgment. 2012-Ohio-4770, 981 N.E.2d 911 (12th Dist.).

{¶ 8} The court of appeals recognized that the record contains no indication that Oeding or J&R had any contact with Ohio and that Fraley's jurisdictional argument could prevail only if Auto-Owners' activities are imputed to J&R and Oeding. *Id.* at ¶ 9. The court of appeals acknowledged instances in which this court has imputed an insurer's action or inaction to its insured, *see, e.g., Griffey v. Rajan,* 33 Ohio St.3d 75, 77-78, 514 N.E.2d 1122 (1987), but it recognized that the question whether an insurer's actions can be imputed to a nonresident insured for purposes of obtaining personal jurisdiction over the insured is one of first impression in this state. *Id.* at ¶ 9-13. The court answered that question in the affirmative and held that Auto-Owners' investigatory hold and its correspondence and calls to Fraley and his attorney brought Auto-Owners, and by extension J&R and Oeding, within Ohio's long-arm statute. *Id.* at ¶ 19. The court also held that Ohio's exercise of jurisdiction over appellants would not contravene principles of due process. *Id.* at ¶ 23-24.

**{¶ 9}** This court accepted appellants' discretionary appeal. 134 Ohio St.3d 1484, 2013-Ohio-902, 984 N.E.2d 28.

*Question Presented*

**{¶ 10}** We are asked to determine whether an Ohio court may impute an insurance company's conduct to its nonresident insured for purposes of establishing personal jurisdiction over the insured. We hold that it may not. An Ohio court may not exercise personal jurisdiction over a nonresident based solely on the conduct of the nonresident's insurance company.

*Analysis*

**{¶ 11}** Appellants' motion to dismiss placed upon Fraley the burden to show that the trial court had personal jurisdiction over appellants. *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27, citing *Fallang v. Hickey*, 40 Ohio St.3d 106, 107, 532 N.E.2d 117 (1988). When, as here, a trial court determines a Civ.R. 12(B)(2) motion to dismiss without an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction. *Id.* In resolving the motion, the trial court must view the allegations in the pleadings and the evidence in the light most favorable to the plaintiff and make all reasonable inferences in the plaintiff's favor. *Id.*, citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994). Personal jurisdiction is a question of law that appellate courts review de novo. *Id.*

**{¶ 12}** The determination whether an Ohio court has personal jurisdiction over an out-of-state defendant requires a two-step inquiry. First, the court must determine whether the defendant's conduct falls within Ohio's long-arm statute or the applicable civil rule. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990). If it does, then the court must consider whether the assertion of jurisdiction over the nonresident defendant would deprive the defendant of due process of law under the Fourteenth Amendment to the United States Constitution. *Id.*

{¶ 13} We begin with the question whether appellants' conduct falls within Ohio's long-arm statute or Civ.R. 4.3(A). Ohio's long-arm statute, R.C. 2307.382, enumerates specific conduct that gives rise to personal jurisdiction. It provides as follows:

(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

(1) Transacting any business in this state;

* * *

(4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

For purposes of R.C. 2307.382, "person" includes "an individual, his executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who is a nonresident of this state." R.C. 2307.381.

{¶ 14} Civ.R. 4.3(A)(1) and (4) mirror R.C. 2307.382(A)(1) and (4) respectively, regarding service of process on persons outside the state of Ohio. Civ.R. 4.3(A) defines "person" in terms nearly identical to R.C. 2307.381.[1]

{¶ 15} Because Fraley concedes that he is not entitled to maintain a direct action against Auto-Owners, we consider only whether the trial court had personal

---

1. " 'Person' includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity * * *." Civ.R. 4.3(A).

jurisdiction over J&R and Oeding. The court of appeals characterized Auto-Owners as J&R and Oeding's agent, concluded that Auto-Owners' actions fell within R.C. 2307.382(A)(4), and held that Auto-Owners' actions may be imputed to Oeding and J&R. 2012-Ohio-4770, 981 N.E.2d 911, at ¶ 18-19. The court of appeals expressly recognized that "there is no indication that J&R or Oeding themselves had any contact with Ohio" but nevertheless held that "by virtue of the actions of Auto-Owners, J&R and Oeding are also within the purview of Ohio's long-arm statute." *Id*. at ¶ 9, 19. The court of appeals' determination is contrary to the plain language of the long-arm statute.

{¶ 16} Our paramount concern in construing a statute is legislative intent. *State ex rel. Steele v. Morrissey*, 103 Ohio St.3d 355, 2004-Ohio-4960, 815 N.E.2d 1107, ¶ 21. To discern legislative intent, "we first consider the statutory language, reading words and phrases in context and construing them in accordance with rules of grammar and common usage." *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 40. When statutory language is unambiguous, a court must apply it as written. *Zumwalde v. Madeira & Indian Hill Joint Fire Dist.*, 128 Ohio St.3d 492, 2011-Ohio-1603, 946 N.E.2d 748, ¶ 23.

{¶ 17} Under R.C. 2307.382(A)(4), an Ohio court "may exercise personal jurisdiction over a *person* who acts directly or by an agent, as to a cause of action arising from the *person's* * * * [c]ausing tortious injury in this state by an act or omission outside this state if *he* regularly does or solicits business, or engages in any other persistent course of conduct * * * in this state." (Emphasis added.) The "persons" over whom Fraley asks the court to exercise jurisdiction are J&R and Oeding.

{¶ 18} To be subject to personal jurisdiction under R.C. 2307.382(A)(4), a person must cause tortious injury in Ohio by an act or omission, either directly or by an agent, outside of Ohio. The alleged injury here is Fraley's loss of the use of

his truck, and the act allegedly causing that injury is Auto-Owners' investigative hold. Fraley maintains that Auto-Owners acted as the agent of J&R and Oeding when it held Fraley's truck in Indiana and that Auto-Owners' act is therefore imputed to its insureds. We will address Fraley's agency argument in more detail below, but we first conclude that more is statutorily required before J&R and Oeding are subject to personal jurisdiction under R.C. 2307.382(A)(4).

{¶ 19} R.C. 2307.382 requires that the person over whom jurisdiction is asserted regularly does or solicits business or engages in another persistent course of conduct in Ohio. Although it is undisputed that neither J&R nor Oeding has engaged in any conduct in Ohio, Fraley nevertheless maintains that Auto-Owners' business or activity in Ohio is imputed to its insureds and satisfies the remaining statutory requirement for jurisdiction over J&R and Oeding.

{¶ 20} Under R.C. 2307.382(A)(4), a person may act, either directly or by an agent, to cause tortious injury, but use of the term "agent" does not indicate a legislative intent to incorporate an agent into the definition of "person." Indeed, were an agent incorporated within the definition of "person," the General Assembly would not have needed to specify that a person may act, either directly or by an agent. As a result of that specification, an agent is necessarily distinct from the person for whom the agent acts. R.C. 2307.382(A)(4) defines the subject of jurisdiction as "a *person* who acts * * * as to a cause of action arising from the *person's* * * * causing tortious injury * * * if *he* regularly does or solicits business, or engages in any other persistent course of conduct * * * in this state." (Emphasis added.) Although a person may act via an agent to cause harm, the person (and not his or her agent) must have done or solicited business or engaged in a persistent course of conduct in Ohio before being subjected to the jurisdiction of Ohio's courts. The word "he" in R.C. 2307.382(A)(4) relates to the "person"—J&R and Oeding in this case—and not to the person's agent. As

neither J&R nor Oeding conducted business in Ohio, R.C. 2307.382(A)(4) does not subject them to personal jurisdiction.

{¶ 21} Fraley also argues that the R.C. 2307.381 definition of "person" includes a personal representative and that Auto-Owners qualifies as a personal representative of its insureds. Fraley maintains that R.C. 2307.381 indicates a legislative intent for maximum reach over nonresident defendants. R.C. 2307.381 defines "person" to include an individual's "executor, administrator, or other personal representative," but R.C. Chapter 2307 does not define those terms. Although the definition in R.C. 2307.381 applies to R.C. 2307.382, Fraley's suggestion that Auto-Owners acted as its insureds' personal representative is misplaced.

{¶ 22} We must accord undefined statutory terms their plain and ordinary meaning. *Am. Fiber Sys., Inc. v. Levin*, 125 Ohio St.3d 374, 2010-Ohio-1468, 928 N.E.2d 695, ¶ 24. *Black's Law Dictionary* 651 (9th Ed.2009) defines "executor" as follows: "**1.** * * * One who performs or carries out some act. **2.** * * * A person named by a testator to carry out the provisions in the testator's will. Cf. ADMINISTRATOR (2)." As relevant to one who acts in a representative capacity, *Black's* defines "administrator" as "**2.** A person appointed by the court to manage the assets and liabilities of an intestate decedent. * * * Cf. EXECUTOR (2)." *Id.* at 52. Review of those definitions reveals that the terms executor and administrator are related.

{¶ 23} When, as in R.C. 2307.381, a statute contains a list of specific terms followed by a catchall term linked to the specific terms by the word "other," we consider the catchall term as embracing only things of a similar character as those comprehended by the preceding terms. *Moulton Gas Serv., Inc. v. Zaino*, 97 Ohio St.3d 48, 2002-Ohio-5309, 776 N.E.2d 72, ¶ 14; *State v. Aspell*, 10 Ohio St.2d 1, 225 N.E.2d 226 (1967), paragraph two of the syllabus. Applying that rule here, "other personal representative" in R.C. 2307.381 embraces relationships of a

similar character as that of an executor or administrator, but it does not extend to the mere contractual relationship between an insurer and its insured. *See Nationwide Mut. Ins. Co. v. Marsh*, 15 Ohio St.3d 107, 109, 472 N.E.2d 1061 (1984) (noting the "long-standing principle of law" that the relationship between an insurer and its insured is purely contractual in nature). This understanding of "personal representative" is consistent with the definition of that term in *Black's Law Dictionary* as "[a] person who manages the legal affairs of another because of incapacity or death, such as the executor of an estate." *Id*. at 1416-1417. Auto-Owners did not act as J&R and Oeding's personal representative.

**{¶ 24}** Rather than focusing on the specific statutory language, the court of appeals looked to prior opinions in which this court has approved imputing an insurer's conduct to its insured. *See Griffey*, 33 Ohio St.3d at 78, 514 N.E.2d 1122 ("for purposes of a Civ.R. 60(B)(1) motion for relief from a default judgment on the grounds of excusable neglect, the neglect of a defendant's insurance company in failing to file an answer or other responsive pleading to a complaint against defendant is imputable to the defendant"); *Peyko v. Frederick*, 25 Ohio St.3d 164, 166-167, 495 N.E.2d 918 (1986) (holding that a plaintiff may access the unprivileged portions of the claim file of a defendant's insurer for purposes of a motion for prejudgment interest because the "defendant's insurer conducts the pretrial negotiations and litigation and approves any offers of settlement—*all* in the defendant's name and for the defendant's benefit" [emphasis sic]). In *Griffey*, we noted a "wealth of authority from outside Ohio supporting the imputation of an insurance company's neglect in defending a lawsuit to its insured." *Id*. at 78. Importantly, however, neither *Griffey* nor *Peyko* involved a question of personal jurisdiction, with its attendant due-process concerns. In both of those cases, the Ohio courts unquestionably had personal jurisdiction over the insured defendants. We are aware of no Ohio case, other than the court of appeals' decision here, in which a court has imputed an insurer's

conduct to its insured for purposes of determining whether the insured was subject to personal jurisdiction in Ohio, and we do not view *Griffey* or *Peyko* as requiring or supporting that result.

{¶ 25} Even if an agent's doing business in Ohio could satisfy R.C. 2307.382(A)(4), Auto-Owners did not act as its insureds' agent when it instituted an investigatory hold on Fraley's truck. We agree with the reasoning of the court in *Kirchen v. Orth*, 390 F.Supp. 313 (E.D.Wis.1975), which addressed a jurisdictional argument similar to Fraley's. *Kirchen* involved the application of Wisconsin's long-arm statute, which permitted the exercise of personal jurisdiction " '[i]n any action whether arising within or without this state, against a defendant who when the action is commenced * * * [i]s engaged in substantial and not isolated activities within this state.' " *Id.* at 316, quoting former Wis.Stat.Ann. 262.05(1)(d), now Wis.Stat.Ann. 801.05(1)(d).

{¶ 26} The plaintiffs in *Kirchen*, who were Wisconsin residents, initiated suit in a Wisconsin federal district court. They argued that the nonresident defendant-driver engaged in substantial activities in Wisconsin by way of settlement negotiations between his insurance company and the plaintiffs, that the insurance company was acting as the driver's agent, and that the insurance company's activities were attributable to the driver for purposes of determining jurisdiction. *Id.* at 315-316.

{¶ 27} The *Kirchen* court rejected the plaintiffs' agency theory. It noted that an agency relationship requires the purported principal to have the right of control over the purported agent's actions. *Id.* at 317, citing 2A Corpus Juris Secundum, Agency, Section 6, at 561 (1972). *Accord Hanson v. Kynast*, 24 Ohio St.3d 171, 494 N.E.2d 1091 (1986), paragraph one of the syllabus ("The relationship of principal and agent * * * exists only when one party exercises the right of control over the actions of another, and those actions are directed toward the attainment of an objective which the former seeks"). The *Kirchen* court

reasoned that liability-insurance policies reserve to the insurer the right to defend, investigate, negotiate, and settle any claim against the insured as the insurer deems expedient, and that the insured has no right to control the method, means, or place of settlement negotiations. *Id.* at 317. The court also noted that while an insurance company may act on its insured's behalf in negotiating and settling claims, the insurer acts "in a dual capacity, the principal purpose of which is to protect its own contingent liability under the contract." *Id.* Under these circumstances, the court refused to find an agency relationship between the insurer and the insured.

{¶ 28} The insurance policy issued to J&R is not part of the record, but Fraley has never argued, and there is nothing in the record to suggest, that J&R and/or Oeding had any control over Auto-Owners' actions, including its investigative hold on Fraley's truck or its negotiations to settle Fraley's claims. There is simply no prima facie showing that Auto-Owners acted as its insureds' agent in this case for purposes of R.C. 2307.382(A)(4). For these reasons, we conclude that Auto-Owners' actions cannot suffice to subject J&R or Oeding to personal jurisdiction under Ohio's long-arm statute.

{¶ 29} In addition to concluding that Ohio may not exercise personal jurisdiction over J&R and Oeding under its long-arm statute, we further conclude that exercise of personal jurisdiction in this case would violate established principles of due process. Because Ohio's long-arm statute is not coterminous with due process, *Goldstein*, 70 Ohio St.3d at 238, 638 N.E.3d 541, fn. 1, even satisfaction of the long-arm statute does not justify the exercise of jurisdiction unless that exercise also comports with the defendant's constitutional right to due process. *Kauffman Racing Equip.*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, at ¶ 45. Here, it would not.

{¶ 30} We must evaluate all assertions of state-court jurisdiction according to the due-process standards set out in *Internatl. Shoe Co. v.*

*Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and its progeny. *Shaffer v. Heitner*, 433 U.S. 186, 212, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). A state may exercise jurisdiction over an out-of-state defendant only if the defendant has "certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " *Internatl. Shoe* at 316, quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940). The concept of minimum contacts protects the nonresident defendant from the burdens of litigating in distant or inconvenient forums and ensures that states do not encroach upon each other's sovereign interests. *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 186, 624 N.E.2d 1048 (1994), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).

{¶ 31} To satisfy the minimum-contacts requirement, "it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). A determination whether a court's exercise of jurisdiction is consistent with due process must focus on "the relationship among the defendant, the forum, and the litigation." *Shaffer* at 204. A court must assess each defendant's contacts with the forum state individually. *Calder v. Jones*, 465 U.S. 783, 790, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), citing *Rush v. Savchuk*, 444 U.S. 320, 332, 100 S.Ct. 571, 62 L.Ed.2d 516 (1980).

{¶ 32} The only alleged connections in this case between appellants and the state of Ohio are Auto-Owners' registration with the Ohio Department of Insurance and its telephone and written correspondence with Fraley and his attorney in Ohio. Fraley maintains that those connections demonstrate sufficient minimum contacts for the trial court to exercise personal jurisdiction over all three

12

appellants. Appellants, on the other hand, argue that the imputation of Auto-Owners' conduct to J&R and Oeding for purposes of determining their amenability to personal jurisdiction violates traditional notions of fair play and substantial justice.

{¶ 33} Subjecting an insured to personal jurisdiction wherever its insurer chooses to conduct settlement negotiations is offensive to due process. *Kirchen*, 390 F.Supp. at 317. When a defendant has engaged in no purposeful and willful conduct with the forum state and has no control over his insurer's settlement activity in that state, the defendant "cannot be said to have willfully associated himself with the state nor purposefully invoked the benefit and protections of its laws." *Id.*

{¶ 34} The United States Supreme Court addressed due-process concerns raised by the exercise of personal jurisdiction over a nonresident defendant based on the conduct of the defendant's insurer in *Rush*, 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516. *Rush* arose out of a single-vehicle accident in Indiana. At the time of the accident, the driver, Randal Rush, and the injured passenger, Jeffrey Savchuk, were Indiana residents, and the vehicle driven by Rush was insured under a liability policy issued by State Farm Mutual Automobile Insurance Company in Indiana. Savchuk subsequently moved to Minnesota, where he commenced an action against Rush and State Farm. Although State Farm conducted business in Minnesota, Rush had no personal contacts with that state. *Id.* at 322.

{¶ 35} Savchuk attempted to invoke the Minnesota court's quasi-in-rem jurisdiction by garnishing State Farm's policy obligation to defend and indemnify Rush. *Id.* at 323. The Minnesota Supreme Court upheld the trial court's denial of the defendants' motions to dismiss and held that fairness supported the exercise of quasi-in-rem jurisdiction "because in accident litigation the insurer controls the defense of the case, State Farm does business in and is regulated by [Minnesota],

and [Minnesota] has an interest in protecting its residents and providing them with a forum in which to litigate their claims." *Id.* at 324, citing *Savchuk v. Rush*, 311 Minn. 480, 245 N.W.2d 624 (1976) ("*Savchuk I*"). As summarized in the United States Supreme Court's opinion, the Minnesota Supreme Court "recognized that Rush had engaged in no voluntary activity that would justify the exercise of *in personam* jurisdiction" but held that the assertion of quasi-in-rem jurisdiction through garnishment of State Farm's obligation to Rush complied with due process. *Id.* at 324-325; *see Savchuk v. Rush*, 272 N.W.2d 888 (Minn.1978) ("*Savchuk II*").

{¶ 36} The United States Supreme Court rejected Savchuk's "ingenious jurisdictional theory," holding that the fictitious presence in Minnesota of State Farm's obligation to defend and indemnify Rush "does not, without more, provide a basis for concluding that there is *any* contact in the *International Shoe* sense" between Minnesota and Rush. (Emphasis sic.) *Id.* at 328-330. "[I]t cannot be said that the *defendant* engaged in any purposeful activity related to the forum that would make the exercise of jurisdiction fair, just, or reasonable * * * merely because his insurer does business there." (Emphasis sic.) *Id.* at 329.

{¶ 37} The Supreme Court also rejected as "plainly unconstitutional" the Minnesota court's aggregation of State Farm's and Rush's forum contacts in a situation in which the resulting assertion of jurisdiction over Rush was based solely on State Farm's activities: "The requirements of *International Shoe* * * * must be met as to each defendant over whom a state court exercises jurisdiction." *Id*. at 332. Despite State Farm's conducting of business in Minnesota and its attempts to settle Savchuk's claims there, the court held that Rush "has *no* contacts with the forum, and the Due Process Clause 'does not contemplate that a state may make binding a judgment * * * against an individual or corporate defendant with which the state has no contacts, ties, or relations.' " (Emphasis sic.) *Id.* at 332-333, quoting *Internatl. Shoe*, 326 U.S. at 319, 66 S.Ct. 154, 90

L.Ed 95. *See also Shoemaker v. McConnell*, 556 F.Supp.2d 351, 355 (D.Del.2008) (holding that the exercise of jurisdiction over a defendant based solely on the actions of the defendant's insurer in the forum state would not comport with due process).

{¶ 38} The same rationale applies here. The requirements of *Internatl. Shoe*, which must be met as to each defendant, have not been met with respect to J&R or Oeding. It cannot be said that either J&R or Oeding engaged in any purposeful activity related to the state of Ohio that would make the exercise of jurisdiction fair, just, or reasonable merely because their insurer did business in Ohio. Simply put, neither J&R nor Oeding have any contacts with the state of Ohio, and the exercise of jurisdiction over those appellants would violate due process.

{¶ 39} The court of appeals here stated that "in some instances, minimum contacts can be established regarding the insured solely by the actions of the insurer negotiating on his behalf in the forum state." 2012-Ohio-4770, 981 N.E.2d 911, at ¶ 22, citing *Univ. of S. Alabama v. S. Farm Bur. Cas. Ins. Co.*, S.D.Ala. No. CA 05-00275-C, 2005 WL 1840238 (July 27, 2005). *Univ. of S. Alabama*, however, is not only distinguishable but is also inconsistent with the reasoning of *Rush,* 444 U.S. 320, 100 S.Ct. 571, 62 L.Ed.2d 516, as pertinent to this case.

{¶ 40} *Univ. of S. Alabama* involved a Mississippi automobile accident between Roosevelt Jackson and Virginia Hamilton, both of whom were Mississippi residents. As a result of the accident, Jackson received medical care from an Alabama hospital, which filed a notice of hospital lien in Alabama. Despite knowledge of the hospital lien, Jackson, Hamilton, and Hamilton's insurer, Mississippi Farm Bureau, settled Jackson's claims without providing for payment of the lien, and Jackson executed a release of all claims against Hamilton

and Mississippi Farm Bureau in exchange for $25,000, paid by Mississippi Farm Bureau.  2005 WL 1840238 at *1-2.

{¶ 41}  The hospital sued Mississippi Farm Bureau, Jackson, and Hamilton in the United States District Court for the Southern District of Alabama for impairment of its lien, and Mississippi Farm Bureau and Hamilton moved the court to dismiss for lack of personal jurisdiction.  *Id.* at *3.  The district court held that Mississippi Farm Bureau was subject to the court's specific jurisdiction because the plaintiff's claim—a direct claim against Mississippi Farm Bureau— arose from the insurer's contacts with Alabama.  *Id.* at *8.  The court also concluded that in light of deposition testimony that Mississippi Farm Bureau acted as Hamilton's agent during settlement negotiations, it could exercise specific personal jurisdiction over Hamilton.  *Id.*, fn. 7.

{¶ 42} In contrast to the plaintiff in *Univ. of S. Alabama*, Fraley has conceded that he does not have a direct claim against Auto-Owners.  Further, Fraley's claim does not arise directly from Auto-Owners' conduct in Ohio. Rather, Fraley relies upon Auto-Owners' sporadic and nebulous contacts with Ohio to establish jurisdiction over Auto-Owners' insureds precisely because he cannot seek recovery directly against Auto-Owners itself.  We have additionally determined that Auto-Owners did not act as its insureds' agent with respect to the conduct underlying Fraley's claim.   This case, therefore, is factually distinguishable from *Univ. of S. Alabama*.  Moreover, in light of the United States Supreme Court's holding in *Rush,* 444 U.S. at 332-333, 100 S.Ct. 571, 62 L.Ed.2d 516—that due process does not permit the exercise of personal jurisdiction over a nonresident defendant who has no contacts with the forum, despite the fact that the defendant's insurance company conducts business in the forum—*Univ. of S. Alabama* does not persuade us that Fraley is entitled to maintain a claim against appellants in Ohio.

*Conclusion*

**{¶ 43}** An Ohio court may not exercise personal jurisdiction over a nonresident based solely on the conduct of the nonresident's insurance company. The assertion of personal jurisdiction over J&R and Oeding, based solely on the conduct of their insurer, is inconsistent with both Ohio's long-arm statute and principles of due process. Neither J&R nor Oeding has any contact with the state of Ohio, and fundamental fairness precludes Ohio from subjecting appellants to the burdens of litigating and the possibility of binding judgments in this state merely because their insurance company engages in business here. Accordingly, we reverse the judgment of the Twelfth District Court of Appeals and reinstate the judgment of the trial court.

Judgment reversed.

O'CONNOR, C.J., and O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.
PFEIFER and O'NEILL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

**{¶ 44}** Does Ohio law shield an insurance company that transacts business in this state from having to be subject to suit in an Ohio court when it engages in tortious activity that does harm to Ohioans? I would hold that Ohio's long-arm statute is broad enough to confer jurisdiction over a defendant whose Ohio-licensed insurer commits tortious acts against Ohio citizens and that exercising jurisdiction over the insured defendants in this case would not raise significant due-process concerns.

**{¶ 45}** The only claim remaining in the lawsuit at issue concerns solely the activity of Auto-Owners Insurance Company ("Auto-Owners"), specifically its alleged retention of plaintiff-appellee David Fraley's tractor-trailer for an unreasonable length of time. The parties seem to agree that R.C. 3929.06

prevents a direct action by Fraley against Auto-Owners; I am not sure that I share that view, but that issue is not alive in this case and is a matter for another day.

{¶ 46} We are left with a case that revolves around the actions of Auto-Owners only but that can be resolved only through a claim against the insureds. I agree with the appellate court below that just as the actions of an insurer can be imputed to the insured for purposes of liability, personal jurisdiction may also be imputed from the insurer to the insured. If direct actions against insurers are indeed forbidden by law, J&R Equipment and Storing and the Oeding estate are defendants here in name only. That legal fiction should not obscure who the true, sole defendant is in this case.

{¶ 47} If it were an available defendant through a direct action, Auto-Owners would be subject to long-arm jurisdiction under R.C. 2307.382(A). Auto-Owners fits the definition of "person" under R.C. 2307.381 and meets the rest of the requirements of R.C. 2307.382:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
>
> * * *
>
> (4) Causing tortious injury in this state by an act or omission outside this state if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

{¶ 48} Auto-Owners allegedly caused injury to Fraley in Fraley's home base of Ohio through wrongfully withholding the use of Fraley's truck; the existence of Auto-Owners' insurance license from the Ohio Department of

Insurance authorizing it to transact business in this state satisfies the "regularly does or solicits business" portion of the long-arm statute.

{¶ 49} To properly determine personal jurisdiction, we must also consider "whether the exercise of jurisdiction would deprive the nonresident defendant of the right to due process of law under the Fourteenth Amendment to the United States Constitution." *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 28.

> [D]ue process is satisfied if the defendant has "minimum contacts" with the forum state such that the maintenance of the suit does not offend " 'traditional notions of fair play and substantial justice.' " [*Internatl. Shoe Co. v. Washington*] (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95, quoting *Milliken v. Meyer* (1940), 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278.

*Id.* at ¶ 45.

{¶ 50} I would hold that Auto-Owners' license to do business in Ohio is sufficient to establish minimum contacts as to both Auto-Owners and its insureds. In *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 559 N.E.2d 477 (1990), this court set forth factors to consider in determining whether the exercise of jurisdiction comports with fair play and substantial justice:

> "Once it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with '*fair play and substantial justice.*' * * * Thus courts in 'appropriate

cases[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' * * * *These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. * * * On the other hand, where a* defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (Citations omitted and emphasis added.)

(Emphasis sic.) *Id.* at 77, quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476-477, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).

{¶ 51} I would find that the burden on Auto-Owners and its insureds in this particular case is minimal. Auto-Owners would not rely on the testimony of anyone involved in the underlying accident; any witnesses would be people under its control, either employees or contractors. This state has great interest in seeing one of its citizens obtain relief for the alleged tortious acts of an insurer licensed to do business in this state. The plaintiff, already hampered by being without an important piece of business equipment for an inordinate period, has great interest in obtaining timely, convenient, and effective relief. Because litigation of the plaintiff's claim would not require the presence of the named Indiana-resident insureds, a lawsuit in Ohio against a corporation that does business in Ohio would efficiently resolve the controversy. Allowing the case to be heard in Ohio would

also be a nod to the practical realities of how insurance litigation is conducted in Ohio and adjoining states. Exercising jurisdiction over the insureds in this case would not upset traditional notions of fair play and substantial justice in cases involving insurance companies—this is the rare case in which there is only a single extant claim, which happens to involve only the insurer's wrongful activity.

{¶ 52} Accordingly, I would affirm the judgment of the court of appeals.

O'NEILL, J., concurs in the foregoing opinion.

_____

Repper, Pagan, Cook, Ltd., and Christopher J. Pagan, for appellee.

Smith, Rolfes & Skavdahl Co., L.P.A., and James P. Nolan II, for appellants.

Green & Green, Lawyers, and Erin B. Moore, urging reversal for amicus curiae, Ohio Association of Civil Trial Attorneys.

_____