[Cite as *Hunter v. Shield* , 2018-Ohio-2371.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ruth A. Hunter et al., | : | |
| Plaintiffs-Appellants, | : | No. 17AP-751 |
| v. | : | (C.P.C. No. 14CV-1274) |
| Rhino Shield et al., | : | (REGULAR CALENDAR) |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on June 19, 2018

**On brief:** *Law Offices of James P. Connors*, and *James P. Connors*, for appellants. **Argued:** *James P. Connors.*

**On brief:** *Sybert, Rhoad, Lackey & Swisher, LLC*, and *Dave Lackey*, for appellee AmCoat Industries, Inc. **Argued:** *Dave Lackey.*

APPEAL from the Franklin County Court of Common Pleas

SADLER, J.

{¶ 1} Plaintiffs-appellants, Ruth A. Hunter and David G. Hunter, appeal from the July 18, 2016 judgment entry of the Franklin County Court of Common Pleas granting the motion to dismiss filed by defendant-appellee AmCoat Industries, Inc., for lack of personal jurisdiction, denying appellants' motion for sanctions, and denying appellants' motions for default judgment and renewed supplemental motion for default judgment and sanctions as moot, and appeal from the April 25, 2017 judgment entry denying appellants' motion for reconsideration. For the following reasons, we affirm the judgment of the trial court.

## I.  FACTS AND PROCEDURAL HISTORY

{¶ 2}   This case concerns whether appellants established that an Ohio trial court had personal jurisdiction over appellee AmCoat Industries, Inc., a Florida corporation, in order to litigate claims arising from an Indiana entity's allegedly faulty application of the Rhino Shield ceramic coating product on appellants' Ohio residence and subsequent failure to adequately make promised repairs.

{¶ 3}   On December 31, 2012, appellants signed a contract for the application of a ceramic coating to their Ohio residence, along with preparation and repair work including pressure washing, caulking and sealing as necessary, filling in stucco cracks, and masking/shielding certain areas to prevent over-spraying.  The header of the contract contains a "Rhino Shield" logo with "By Tri-State Coating, Inc." stated directly underneath the logo.  (Sept. 4, 2014 Am. Compl., Ex. B at 1.)  In the header, phone numbers are provided with 317 area codes and for 888-RHINO41, and website addresses are provided with names indicating Indiana, Kentucky, and Ohio.  The sales representative is listed as Rudy Pallone, who provides a 614 area-code phone number.  Appellant David Hunter signed the contract.  The price agreed on in the contract is a total of $11,998 with a $1,200 down payment, a partial payment of $5,399, and $5,399 due on completion, with all checks made payable to "RhinoShield."  (Sept. 4, 2014 Am. Compl., Ex. B at 1.)  The body of the contract states the customer shall pay certain fees and costs should "Tri-State Coatings"[1] file a legal action to collect amounts due, and cancellation and any other written notices should be sent to Tri-State Coating, Inc. ("Tri-State") at a particular Indianapolis address.  (Sept. 4, 2014 Am. Compl., Ex. B at 1.)  The contract continues:

> Tri-State Coating Limited warranty: Tri-State Coating warrants the material is of the quality specified and will transfer to the Customer all manufacturer's written warranties.  Tri-State Coating warrants workmanship for two (2) years after the date of completion and will remedy substantial defects without charge to the Customer, on written notice from Customer within such period.  Tri-State Coating and Customer agree that all implied warranties including,

---

[1] We note that the contract for the application of the ceramic coating references both "Tri-State Coating*s*" and "Tri-State Coating."

without limitations, warranties of habitability, fitness for a particular purpose and merchant ability [sic] are hereby excluded and there are no warranties or representations which extend beyond those expressly set forth in this agreement.

Tri-State Coatings makes no warranties express or implied regarding any of the products or services except the express warranties provided herein. TRI-STATE COATING EXPRESSLY DISCLAIMS ANY AND ALL WARRANTIES EXCEPT AS PROVIDED HEREIN. WITHOUT LIMITING THE FOREGOING, THERE IS NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR USE OR PURPOSE WITH RESPECT TO THE GOODS OR SERVICES SOLD.

* * *

Entire Understanding: Tri-State Coating is not liable or bound by any warranties, guarantees, statement, or representations made by any broker, agent, employee, or other persons representing or proposing to represent to Tri-State Coating unless expressly set forth in the Agreement. It is understood and agrees [sic] that all prior understanding and agreement between the parties are merged in the Agreement, and that Agreement alone fully and completely constitute the Final Agreement. Any subsequent changes or modification hereto shall not be binding on either party unless in writing and signed by both parties hereto.

(Sept. 4, 2014 Am. Compl., Ex. B at 2.) The December 31, 2012 contract further states that Tri-State will not be responsible for indirect or consequential damages, the buyer's remedy is limited to the price actually paid, and that "[a]ny questions, disputes, controversies, or litigation arising either directly or indirectly from [the December 31, 2012] contract" shall be submitted to arbitration conducted in Marion County, Indiana. (Sept. 4, 2014 Am. Compl., Ex. B at 2.) The contract footer states: "7745 E. 89th St. Indianapolis, IN 46256 indyrhinoshield@yahoo.com." (Sept. 4, 2014 Am. Compl., Ex. B at 2.)

{¶ 4} On February 6, 2014, appellants filed a complaint alleging violations of the Ohio Consumer Sales Practices Act ("CSPA"), negligent and/or false misrepresentation, breach of contract, and violations of the Ohio Home Sales Solicitation Act ("HSSA")

arising from claimed problems with the project. Appellants cited failures of inspection, preparation and repair work, application of the coating, and clean up as well as subsequent failures to honor warranties and remedy those problems as promised. Appellants named as defendants "Rhino Shield" under a Columbus, Ohio address, "Tri-State Coatings and Repair LLC" under a West Chester, Ohio address, "Tri-State Coating, Inc." under an Indianapolis, Indiana address, "John D. Robertson," "Cleveland Coatings, Inc.," "Jim Williams," and "Rudy Pallone." (Feb. 6, 2014 Compl. at 1.) Tri-State answered and asserted a third-party complaint against Alexandre Dgebuadze, a contractor hired by Tri-State to perform services on appellants' home. (Mar. 11, 2014 Answer and Third-Party Compl. at 1.)

{¶ 5} On September 4, 2014, appellants moved for leave to file an amended complaint, and the trial court granted appellants' motion. In the amended complaint, appellants named several new defendants: "Rhino Shield" under an Indianapolis, Indiana address, "Aleksandre Dgebuadze," "Timeless Coatings LLC", "Rhino Shield Florida" under a Destin, Florida address, "Rhino Shield" under a Brighton, Michigan address, and appellee in the instant case, "AmCoat Industries, Inc." Regarding the nature of the complaint, appellants alleged the "case arises from an agreement for home exterior painting and repair services which the defendants, who are collectively and individually known as 'Rhino Shield,' agreed to perform for [appellant] David Hunter pursuant to written contract on December 31, 2012." (Sept. 4, 2014 Am. Compl. at 2.)

{¶ 6} Addressing jurisdiction and the parties, the amended complaint asserts in pertinent part that "[d]efendants are collectively and individually known as 'Rhino Shield' in one form or another, and are believed to be a loosely organized group of foreign and domestic corporations, limited liability companies, and/or individuals based in Indiana, Kentucky, Florida, Michigan, or perhaps some other state" and that " 'Rhino Shield' is now believed to also be known as AmCoat Industries Inc. and/or Rhino Shield Florida," entities allegedly licensed to conduct business in Michigan and not Ohio. (Sept. 4, 2014 Am. Compl. at 3.) Appellants assert that Rhino Shield conducts business nationwide through an extensive mass marketing strategy without revealing the true parent company, has "reformed information about how it conducts business, now claiming to be a nationwide network of 'distributors,' " and held itself out as Rhino Shield when

contracting with consumers but actually had the services performed and product application done by subcontractors or others. (Sept. 4, 2014 Am. Compl. at 4.)

{¶ 7} The causes of action in the amended complaint remained the same as stated in the original complaint. In Counts 1 and 4, appellants allege the defendants violated two Ohio consumer protection statutes: the CSPA and the HSSA. In Count 2 of the amended complaint, appellants allege the defendants negligently and/or intentionally made misrepresentations to appellants on which they relied to their detriment. In Count 3, appellants allege the defendants breached the written contract of December 31, 2012 by failing to complete the agreement, failing to perform services and repair, and failing to honor warranties and guarantees, including the written warranty in the December 31, 2012 agreement (previously stated in this opinion) and a separate "25 Year Non-Prorated Transferable Limited Warranty" for the Rhino Shield ceramic coating. (Sept. 4, 2014 Am. Compl., Ex. E at 1.) The 25-year transferable warranty, which covers only the replacement of the coating material, bears the Rhino Shield name and logo with an Indianapolis address, indicates "Tri-State Coatings, Inc." as "[d]ealer," and states that it is "valid only when the Rhino Shield Ceramic Coat Material is applied * * * in accordance with the Manufacturer's approved methods." (Sept. 4, 2014 Am. Compl., Ex. E at 1.) Appellants demanded judgment against the defendants jointly and severally "where applicable," in an amount exceeding $25,000 for both compensatory and punitive damages, treble damages where appropriate, interest, attorney fees, costs of the action, and further relief as deemed just and appropriate. (Sept. 4, 2014 Am. Compl. at 22.)

{¶ 8} On January 13, 2015, appellee filed a notice of improper service, indicating that "[t]he proper service address for AmCoat is 4012 West Commons Drive, Unit 116, Destin, Florida 32541, which is the address listed with the Florida Department of State, Division of Corporation." (Jan. 13, 2015 Notice at 1.) Attached to the notice is an affidavit of AmCoat officer Steve Dominique, averring "AmCoat is a corporation organized and existing under the laws of the state of Florida" with a principal address at that Destin address as well as a print out of the state of Florida entity search for AmCoat. Appellee filed a second notice of improper service on January 26, 2015, noting the continued impropriety of service by ordinary mail under the circumstances. Appellants filed a

motion for default judgment on February 10, 2015, and appellee filed a motion for sanctions against appellants and their attorney on February 12, 2015 for doing so.

{¶ 9}  The case was temporarily stayed pending a decision on arbitration involving Tri-State.[2]  The case was reinstated to the court's active docket on November 10, 2015. The trial court then granted appellants' motion for default judgment against Dgebuadze on November 10, 2015 and denied Tri-State's motion for partial summary judgment on January 25, 2016.

{¶ 10} On April 7, 2016, appellee filed an amended motion to dismiss due to failure of appellants to obtain service within one year as required under Civ.R. 3(A).  Appellee noted it entered an appearance solely for the purpose of moving the court to dismiss the case against it.  On April 17, 2016, appellants filed a memorandum contra appellee's motion to dismiss, as well as a renewed supplemental motion for default judgment against appellee and for sanctions pursuant to R.C. 2323.51.

{¶ 11} Appellee filed a motion to dismiss for lack of jurisdiction and failure to state a claim on which relief can be granted on April 26, 2016.[3]  Appellee argued it distributes the product Rhino Shield to the Indiana corporation Tri-State, the allegations are based on conduct between Tri-State and appellants and appellee has had no participation in any of the transactions that form the basis of the allegations, appellants had not asserted any product liability claims, and appellee has no business transactions or contacts with the state of Ohio.  Thus, appellee asserts that Ohio's long-arm jurisdiction rule and statute— Civ.R. 4.3 and R.C. 2307.382—cannot be used to confer personal jurisdiction on appellee. Appellee argued, in the alternative, that appellants had failed to state a claim against appellee on which relief can be granted pursuant to Civ.R. 12(B)(6).  Appellee attached the dealership/supply agreement between Tri-State and appellee, information on appellee's registered trademark for the product Rhino Shield and state of Florida corporate registration information, Tri-State's certificate of incorporation and certificate

---

[2] On March 5, 2017, the trial court issued a decision and entry denying a motion for an order staying the case pending arbitration filed by Tri-State.  Tri-State appealed, and this court affirmed the trial court judgment regarding arbitration in *Hunter v. Shield*, 10th Dist. No. 15AP-172, 2015-Ohio-4603.  In *Hunter v. Shield*, we noted that "[a]ppellees did not obtain service of the summons and complaint on the other six defendants [listed in the original complaint], and they are not part of this appeal." *Id.* at ¶ 2, fn. 1
[3] On the same day, appellee filed an amended motion to dismiss to correct a typographical error.

of assumed business name of Rhino Shield, both in the state of Indiana, and the contract between Tri-State and appellants.

{¶ 12} Various additional motions and memoranda ensued. On April 29, 2016, appellants moved for partial summary judgment on "their claims for breaches of various written and verbal warranties * * * and related violations of the Ohio [CSPA] relative to the separate warranties provided by defendants Tri-State Coating, Inc., James Williams, Rudolph Pallone, and AmCoat Industries, Inc. arising from painting and repair services at [appellants'] home" and on their claims for breach of contract and related violations of the CSPA as to Tri-State, Williams, and Pallone. (Apr. 29, 2016 Pls.' Mot. for Partial Summ. Jgmt. (#5) at 1.)

{¶ 13} On May 10, 2016, appellants filed a memorandum contra appellee's motion to dismiss. Within it, appellants argued that appellee is in default and, alternatively, appellee's other arguments lack merit. Specifically, appellants allege that appellee, a distributor who buys Rhino Shield from a manufacturer, "is actually 'Rhino Shield' " and "merely allows Messrs. Dominique and Williams and Pallone, and their shell entities, AmCoat and Tri-State and Cleveland Coatings, to conduct business on their behalves in Ohio." (May 10, 2016 Memo. Contra Mot. to Dismiss at 2-3.) Appellants point to Williams' deposition discussing that he began working with Dominique at AmCoat in 2002, running a branch of AmCoat in Indianapolis, until 2005 when Williams started a new "S" Corporation, Tri-State Coating, and purchased from AmCoat the exclusive rights to market Rhino Shield in three states. Williams later set up another entity, Cleveland Coatings, which filed a trade name registration for "Rhino Shield" in Ohio. Appellants also point to Dominique's deposition in a separate 2005 case filed by appellee in a federal district court in which Dominique discusses his history with Williams and a previous company and product and a 2002 Federal Trade Commission decision and order regarding the previous company. Appellants conclude that "[a]s is obvious from the foregoing, AmCoat has extensive connections and contacts with Ohio * * * [s]tarting with * * * Williams as its registered agent, AmCoat aka Rhino Shield has conducted business in Ohio since at least 2010 according to Jim Williams, and likely earlier * * *. There is simply no basis at law for AmCoat to argue that it has no contacts with Ohio or that a

claim has not been sufficiently alleged against it in this case." (May 10, 2016 Memo. Contra Mot. to Dismiss at 15-16.)

{¶ 14} On May 13, 2016, appellee entered an appearance limited to the purpose of replying to appellants' memorandum contra and renewing its motion to dismiss for lack of personal jurisdiction and for failure to state a claim on which relief can be granted. Appellee argued that service was deficient, that appellants listed appellee as a party but failed to assert a basis for a cause of action against it, and that appellants' arguments regarding the entities all essentially being the same is an unsupported attempt at redirection to meaningless points which have no bearing on the identities of the separate defendants identified in the complaint. Appellee asserted appellants ignored the only legitimate issue: whether appellee had sufficient contacts with Ohio to permit the court to exercise personal jurisdiction over it and, specifically, how appellee might fit the criteria under Civ.R. 4.3 and/or R.C. 2307.382.

{¶ 15} On July 18, 2016, the trial court entered judgment granting appellee's motion to dismiss the amended complaint for lack of personal jurisdiction. The trial court noted that neither party cited to particular subsections of Civ.R. 4.3(A) or R.C. 2307.382 to support its argument. After reviewing Civ.R. 4.3(A) or R.C. 2307.382 and all the evidence and allegations before it, construing the evidence and pleadings in favor of appellants, the trial court found appellants had failed to make a prima facie showing of personal jurisdiction. Therefore, the trial court dismissed appellants' amended complaint as to appellee.

{¶ 16} Since the trial court found lack of personal jurisdiction dispositive, it did not rule on appellee's motion regarding Civ.R. 12(B)(6) and found appellants' February 10, 2015 and April 17, 2016 motions for default judgment, appellee's April 7, 2016 motions to dismiss, and Rhino Shield's April 27, 2016 motion to strike to be moot. The trial court additionally denied appellee's February 12, 2015 motion for sanctions but decided to strike appellants' seven pending motions for summary judgment on the docket while allowing appellants leave to file one consolidated summary judgment motion within 30 days of the date of the entry.

{¶ 17} Appellants filed a motion to reconsider on July 21, 2016, this time arguing that appellee is subject to specific personal jurisdiction under Civ.R. 4.3(A)(1), (2), (3),

and (4), and further arguing personal jurisdiction over appellee is reasonable and comports with due process. Appellants additionally reference the existence of general personal jurisdiction over appellee without providing a specific argument to support that contention. Appellants attached the dealership/supply agreement and amendments between appellee and Tri-State, Ohio Secretary of State certificates as to the foreign/designated appointment of agent and foreign license/for profit assumed name of "Rhino Shield (Tri-State Coating, Inc.)" including Tri-State's incorporation status in Indiana, and Tri-State's certificate of existence as a for-profit corporation in Indiana. (July 21, 2016 Mot. for Recons., Ex. B at 1.) Appellee filed a memorandum contra arguing it has no agents in the state of Ohio, did not act directly within the state of Ohio to cause any of the events to occur out of which the claims arose, and simply delivered exterior coating to Tri-State. Therefore, appellee argued no causal link exists between appellee's activities and the causes of action to establish personal jurisdiction, and subjecting appellee to jurisdiction in these circumstances offends due process. On April 25, 2017, the trial court denied appellants' motion for reconsideration, stating it had "previously reviewed and considered all subsections of Civ.R. 4.3(A) and R.C. 2307.382 before determining that [appellants] had failed to make a *prima facie* showing of jurisdiction in this case," and "[u]pon thorough review of the parties' filings, the Court does not find any basis to reconsider that decision." (Emphasis sic.) (Apr. 25, 2017 Trial Ct. Decision at 2.)

{¶ 18} On September 22, 2017, appellants filed a notice, pursuant to Civ.R 41(A)(1)(a), of the voluntary dismissal of the action without prejudice as to "the remaining defendants Rhino Shield, James H. Williams, Rudolph J. Pallone, and Tri-State Coating, Inc." (Sept. 22, 2017 Notice of Dismissal at 1.)

{¶ 19} Appellants filed a timely appeal to this court.

## II. ASSIGNMENTS OF ERROR

{¶ 20} Appellants present four assignments of error:

> 1. The trial court erred by denying plaintiffs' motion for default judgment against defendant AmCoat Industries, Inc. as "moot."

> 2. The trial court erred by denying plaintiffs' renewed supplemental motion for default judgment and sanctions against defendant AmCoat Industries, Inc. as "moot."

3. The trial court erred by granting defendant AmCoat Industries, Inc.'s motion to dismiss for lack of jurisdiction.

4. The trial court erred by denying plaintiffs' motion for reconsideration of its decision dismissing AmCoat for lack of jurisdiction.

## III. STANDARD OF REVIEW

{¶ 21} "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St.3d 81, 2010-Ohio-2551, ¶ 27. On a defendant's motion to dismiss, the plaintiff bears the burden of establishing the trial court has personal jurisdiction over the defendant. *Id.*, citing *Fallang v. Hickey*, 40 Ohio St.3d 106, 107 (1988). If the court determines a Civ.R. 12(B)(2) motion to dismiss without an evidentiary hearing, "the plaintiff need only establish a prima facie showing of personal jurisdiction, which requires sufficient evidence to allow reasonable minds to conclude that the trial court has personal jurisdiction." *Austin Miller Am. Antiques, Inc. v. Cavallaro*, 10th Dist. No. 11AP-400, 2011-Ohio-6670, ¶ 7. In resolving the motion, the court must view the allegations in the pleadings and the evidence in the light most favorable to the plaintiff and make all reasonable inferences in the plaintiff's favor. *Kauffman Racing* at ¶ 27, citing *Goldstein v. Christiansen*, 70 Ohio St.3d 232, 236 (1994).

## IV. DISCUSSION

### A. Third and Fourth Assignments of Error

{¶ 22} Because the third and fourth assignments of error are dispositive of this appeal, we address them first. In both the third and fourth assignments of error, appellants challenge the trial court's decision to grant appellee's motion to dismiss for lack of personal jurisdiction over appellee.

{¶ 23} As a preliminary issue, appellants argue in their reply brief, for the first time, that appellee waived personal jurisdiction in this case either by only contesting service in its first appearance or through its subsequent filings generally.[4] However, even a de novo standard of review does not supersede the settled practice of not addressing

---

[4] We note that appellants' argument in their original brief to this court takes the opposite approach: that appellee was in default. We further note that appellants neither make nor support with legal authority an argument specific to Civ.R. 12(B)(6) motions in their reply.

issues raised for the first time on appeal. *Tucker v. Leadership Academy for Math*, 10th Dist. No. 14AP-100, 2014-Ohio-3307, ¶ 20. Furthermore, "[a]ppellate courts generally will not consider a new issue presented for the first time in a reply brief." *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, ¶ 18. Therefore, because appellants did not raise this argument to the trial court or in their appellate brief, they have waived the argument, and we decline to consider it for the first time on appeal.

{¶ 24} In Ohio, the determination whether a trial court has personal jurisdiction over an out-of-state defendant requires a two-step inquiry. *Fraley v. Estate of Oeding*, 138 Ohio St.3d 250, 2014-Ohio-452, ¶ 12. As stated in *Fraley*:

> First, the court must determine whether the defendant's conduct falls within Ohio's long-arm statute or the applicable civil rule. *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990). If it does, then the court must consider whether the assertion of jurisdiction over the nonresident defendant would deprive the defendant of due process of law under the Fourteenth Amendment to the United States Constitution. *Id.*

*Id. Kauffman Racing* at ¶ 45 ("Ohio's long-arm statute is not coterminous with due process.").

{¶ 25} In the first step, a court must determine whether Ohio's long-arm statute, R.C. 2307.382, or complementary service rule, Civ.R. 4.3(A), confer personal jurisdiction. *Simmons v. Budde*, 10th Dist. No. 14AP-846, 2015-Ohio-3780, ¶ 15, citing *Kauffman Racing* at ¶ 35 ("The requirements for out-of-state service of process to effectuate personal jurisdiction on nonresident defendants 'mirror' the long-arm statute under these sections."). On appeal, appellants contend that appellee is subject to Ohio's long-arm statute under Civ.R. 4.3(A)(1), (2), (3), and (4). In pertinent part, Civ.R. 4.3(A) states:

> **When service permitted.** Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state or is a resident of this state who is absent from this state. "Person" includes an individual, an individual's executor, administrator, or other personal representative, or a corporation, partnership, association, or any other legal or commercial entity, who, acting directly or by an agent, has caused an event to occur out of which the

claim that is the subject of the complaint arose, from the person's:

**(1)** Transacting any business in this state;

**(2)** Contracting to supply services or goods in this state;

**(3)** Causing tortious injury by an act or omission in this state, including, but not limited to, actions arising out of the ownership, operation, or use of a motor vehicle or aircraft in this state;

**(4)** Causing tortious injury in this state by an act or omission outside this state if the person regularly does or solicits business, engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state.

{¶ 26} At the outset, we note that in initially opposing appellee's motion to dismiss, appellants failed to present any argument to the trial court regarding Ohio's long-arm statute and civil rule and instead emphasized a general theory that the defendants named were collectively "Rhino Shield" and have "extensive contacts with Ohio." (Appellants' May 10, 2016 Memo. Contra Appellee's Am. Mot. to Dismiss at 3.) Appellants waited until their motion for reconsideration to the trial court to make the long-arm statute arguments for the first time. Ordinarily, a motion for reconsideration " 'may not raise new issues not previously raised, *Columbus v. Hodge*, 37 Ohio App.3d 68, 523 N.E.2d 515 (Franklin 1987).' " *Fenton v. Time Warner Entertainment Co.*, 2d Dist. No. 19755, 2003-Ohio-6317, ¶ 2, quoting Whiteside, *Ohio Appellate Practice*, Author's Comment, at 700 (2003 Ed.); *In re Estate of Traylor*, 7th Dist. No. 03 MA 253, 2005-Ohio-1348, ¶ 8. *See generally State v. Brown*, 7th Dist. No. 13 MA 172, 2014-Ohio-5824, ¶ 45-47; *Pitts v. Ohio Dept. of Transp.*, 67 Ohio St.2d 378 (1981) (discussing applicability of motions for reconsideration in the trial court despite the lack of a civil rule governing the practice). Faced with the new arguments, the trial court did not find any basis to reconsider its decision since it had already reviewed and considered all subsections of Civ.R. 4.3(A) and R.C. 2307.382 before determining appellants had failed to make a prima facie showing of jurisdiction. Considering the trial court did not address the new arguments posed by appellants as a basis for reconsideration, and in light of appellants' burden of establishing the trial court

has personal jurisdiction over appellee, appellants' initial failure to present arguments under Ohio's long-arm statute alone justifies finding in favor of appellee.

{¶ 27} However, even if appellants properly raised Ohio's long-arm statute and civil rule in their motion for reconsideration in the trial court, appellants have not demonstrated reversible error in this case. Appellants argue that Civ.R. 4.3(A)(1) applies because appellee "transact[s] any business in this state" under the broad definition of this phrase adopted by Ohio courts by virtue of (1) its dealership/supply agreement with Tri-State which enables Tri-State to sell Rhino Shield services to Ohio consumers, and (2) by virtue of the 25-year written warranty. Appellants argue Civ.R. 4.3(A)(2) applies because, through its dealership/supply agreement with Tri-State, appellee "has an agreement with Tri-State to supply its coating product 'Rhino Shield' in Ohio," such agreement requires Tri-State to use a standard warranty agreement, and, according to appellants, appellee "uses a contracted agent to supply both its product and product warranty in Ohio to Ohio consumers." (Appellants' Brief at 42, 46.) Appellants argue Civ.R. 4.3(A)(4) applies because appellee caused tortious injury in Ohio by an act or omission outside Ohio by refusing to honor its own written warranty provided directly to appellants, along with the fact that appellee derives substantial revenue from its products used, sold, and consumed in this state. Appellants provide no argument in support of Civ.R. 4.3(A)(3).

{¶ 28} Appellee counters the single reference to appellee within the amended complaint states that " 'Rhino Shield' is now believed to also be known as AmCoat Industries," an entity not licensed to do business in Ohio. (Sept. 4, 2014 Am. Compl. at 3.) Appellee argues that its only contact with the state of Ohio is through the supply of the Rhino Shield product to Tri-State, an Indiana corporation. Appellee notes that appellants made "vague references" in their brief suggesting appellee provided defective coating but contends that appellants made no product liability or defect claims made in the amended complaint, and there are no clear allegations as to the basis of their claims against appellee in their filings with the trial court. (Appellee's Brief at 12.) Finally, appellee contends it is not a party to any written warranty, appellants made no request and appellee did not fail to honor the warranty, and appellants' claimed damages have nothing to do with the supply or product. As a result, appellee suggests there is no "nexus"

between appellee's supply of the Rhino Shield product to Tri-State and appellants' causes of action. (Appellee's Brief at 12.)

{¶ 29} We agree with appellee, because at the outset, "[t]he burden of affirmatively demonstrating error on appeal rests with the [appellant]." *Miller v. Johnson & Angelo*, 10th Dist. No. 01AP-1210, 2002-Ohio-3681, ¶ 2; *see also* App.R. 9 and 16(A)(7). Pursuant to App.R. 16(A)(7), "[t]he appellant shall include in its brief, under the headings and in the order indicated, all of the following: * * * (7) [a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, *with citations to the authorities, statutes, and parts of the record on which appellant relies.*" (Emphasis added.) "It is not the duty of this court to search the record for evidence to support an appellant's argument as to alleged error." *Abraham v. BP Exploration & Oil, Inc.*, 10th Dist. No. 01AP-1061, 2002-Ohio-4392, ¶ 32.

{¶ 30} Here, appellant has not provided any argument or legal support for Civ.R. 4.3(A)(3). Furthermore, regarding Civ.R. 4.3(A)(4), appellants have not provided a legal definition of "tortious injury" or argument as to why a failure to honor a warranty in this case meets such a definition and have not provided any other legal support on this section of the civil rule. We decline to find appellants have not met their burden of demonstrating error on appeal in this regard. *Miller*, 2002-Ohio-3681; App.R. 16(A)(7).

{¶ 31} Regarding Civ.R. 4.3(A)(1) and (2), even if we were to find, for sake of argument, that appellants demonstrated appellee transacted business in this state or contracted to supply services or goods in this state, appellants have not demonstrated a connection between these acts and the claims giving rise to the complaint to support reversal in this case.

{¶ 32} In Ohio, personal jurisdiction over an out-of-state defendant may be properly exercised where there is a causal connection between the defendant's act as enumerated in the statute and/or rule and the causes of action asserted against him or her. Civ.R. 4.3(A); R.C. 2307.382(C) ("When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."); *Simmons* at ¶ 16, 19, 21.

{¶ 33} First, as noted by appellee, it is unclear what causes of action appellants assert against appellee. In appellants' own words, this "case arises from an agreement for home exterior painting and repair services which the defendants, who are collectively and individually known as 'Rhino Shield,' agreed to perform for [appellant] David Hunter pursuant to written contract on December 31, 2012." (Sept. 4, 2014 Am. Compl. at 2.) Appellants' only reference to appellee in the amended complaint is to note that they believe appellee is now Rhino Shield. Complicating things further, appellants dismissed "Rhino Shield" as a defendant. (Sept. 22, 2017 Notice of Dismissal at 1.) Although appellants essentially contend Tri-State, the company who appellants directly contracted with to do the work on their house and promised to repair the work, is one in the same as appellee, information provided by appellants themselves, such as the dealership agreement and certificate of incorporation, specifically state otherwise.

{¶ 34} Second, the bulk of the amended complaint is related to allegations of faulty application of the coating product, including applying the coating product in incorrect and varying thicknesses and damages resulting from over-spray and the subsequent failure to repair the work as promised. A cause of action regarding the product being defective is not stated in the amended complaint, and the factual allegation regarding the paint chipping and peeling is stated in relation to the faulty and inconsistent application of the product. For example, the complaint states "[t]he coating was also not applied at the proper mil thickness and continues to peel, split, crack, blister, and break." (Sept. 4, 2014 Am. Compl. at 13.)

{¶ 35} Third, several problems bog down appellants' assertions of personal jurisdiction by way of alleged causes of action related to the 25-year transferrable warranty. The warranty, which is attached to the amended complaint, does not include appellee's name, specifically states it is only valid when the material is applied in accordance with the manufacturer's approved methods (which appellants allege did not happen), and does not extend beyond the replacement of the coating material, which is not sought by appellants in their suit. Moreover, there is no allegation that appellants demanded appellee replace the coating material pursuant to the warranty and that appellee subsequently refused to do so.

{¶ 36} Overall, reviewing the allegations in the pleadings and the evidence in the light most favorable to appellants and making all reasonable inferences in appellants' favor, we find appellants have not met their burden to demonstrate a causal connection between appellee's alleged activities under Civ.R. 4.3(A)(1) and (2) and the claims asserted against appellee to support personal jurisdiction over appellee in this case.

{¶ 37} Finally, although appellants mention general jurisdiction and cite to *Helicopteros Nacionales de Columbia v. Hall*, 466 U.S. 408, 414 (1984), and *Internatl. Shoe Co. v. Washington*, 326 U.S. 310 (1945), appellants failed to provide support for the applicability of general jurisdiction under Ohio law and failed to explain within its motions to the trial court and to this court how a general jurisdiction theory applies to the facts of this case. (Appellants' Brief at 40.) Therefore, appellants have not met their burden in demonstrating error on appeal in this regard. *Miller*, 2002-Ohio-3681;App.R. 16(A)(7).

{¶ 38} Accordingly, appellants' third and fourth assignments of error are overruled.

### B. First and Second Assignments of Error

{¶ 39} Under the first and second assignments of error, appellants contend the trial court erred by denying appellants' motion for default judgment against appellee (and appellants' renewed supplemental motion for default judgment and sanctions) as moot. We disagree.

{¶ 40} A trial court's denial of a motion for default judgment is ordinarily reviewed on appeal for an abuse of discretion. However, dismissals on the basis of mootness present questions of law, which a court of appeals reviews de novo. *Tucker* at ¶ 7; *Heartland of Portsmouth, OH, LLC v. McHugh Fuller Law Group, PLLC*, 4th Dist. No. 16CA3741, 2017-Ohio-666, ¶ 15.

{¶ 41} Appellants specifically contend appellee was clearly in default and filed false/fraudulent affidavits related to issues of improper service, appellants had a right to have their motion for default judgment heard and decided, the trial court erred by allowing appellee to file an untimely motion to dismiss out of rule and without leave from the court, and this court must reverse and grant default judgment and sanctions as a matter of law. Appellants cite to *Miller v. Lint*, 62 Ohio St.2d 209 (1980), and *PSE Credit*

*Union, Inc. v. Wells*, 8th Dist. No. 104075, 2016-Ohio-7780, ¶ 14, in support of their argument.

{¶ 42} In *Miller*, 62 Ohio St.2d 209, after service of summons and a copy of a complaint was made on the defendant and the defendant filed an untimely answer, the plaintiff sought a default judgment. The trial court granted leave to file the answer, and the appellate court overruled the plaintiff's allegation the trial court erred in allowing the late answer. The Supreme Court of Ohio reversed the judgment allowing the defendant to file the answer out of rule without regard to civil procedure rules. In *PSE Credit Union*, a plaintiff never filed an answer to the defendant's cross-claims prior to filing a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim on which relief can be granted. The trial court granted the motion to dismiss. The appellate court reversed, noting that "[a]lthough a party may raise the defense of failure to state a claim upon which relief can be granted up to and including trial, it must do so in accordance with the civil rules." *Id.* at ¶ 17.

{¶ 43} Both *Miller*, 62 Ohio St.2d 209, and *PSE Credit Union* do not involve issues of personal jurisdiction and, as such, are readily distinguishable from this case. Appellants' legal argument is generally premised on rules and cases in which service of process of the complaint had been established and issues of personal jurisdiction are not involved. Personal jurisdiction affects the very authority of a court to enter judgment. *Don Ash Properties v. Dunno*, 10th Dist. No. 03AP-375, 2003-Ohio-5893, ¶ 8 ("A judgment entered without personal jurisdiction is void."); *Maryhew v. Yova*, 11 Ohio St.3d 154, 156 (1984) (reversing default judgment in favor of plaintiff where personal jurisdiction over out-of-state corporate office was not established).

{¶ 44} Here, the trial court correctly found it lacked personal jurisdiction over appellee under Civ.R. 4.3(A) and R.C. 2307.382(C).[5] As such, it lacked authority to issue judgment against appellee. Considering all the above, appellants have not met their

---

[5] We note that, even had appellee received service of the complaint, they were not technically served under Civ.R. 4.3. Civ.R. 4.3(A) expressly only permits out-of-state service of process as provided in that rule, in other words, when the court has personal jurisdiction over the out-of-state defendant. Civ.R. 4.3(A) ("When service permitted. Service of process may be made outside of this state, as provided in this rule, in any action in this state, upon a person who, at the time of service of process, is a nonresident of this state [under a set of enumerated circumstances]."); *Simmons* at ¶ 22, citing *Green v. Huntley*, 10th Dist. No. 09AP-652, 2010-Ohio-1024, ¶ 18, fn. 1.

burden in affirmatively demonstrating error on appeal.  *Miller*, 2002-Ohio-3681; App.R. 16(A).

{¶ 45} Accordingly, appellants' first and second assignments of error are overruled.

## V.  CONCLUSION

{¶ 46} Having overruled appellants' four assignments of error, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BRUNNER and HORTON, JJ., concur.

_____